# UNITED STATES DISTRICT COURT
## Western District of Texas
## Austin Division

| | | |
|---|---|---|
| **Thomas E. Doughty,** | § | |
| | § | |
| Plaintiff, | § | Case No. 1:24-cv-356 |
| | § | |
| v. | § | |
| | § | Jury Demanded |
| **Allstate Insurance Company and** | § | |
| **Maverick Leads, LLC** | § | |
| | § | |
| Defendants. | § | |

### Plaintiff's First Amended Complaint

Plaintiff, Thomas E. Doughty ("**Plaintiff**") files this action against Allstate Ins. Company (**Allstate**) and Maverick Leads, LLC (**Maverick Leads**).

1. **Introduction**

   1.1. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Political Consultants,* 140 S. Ct. 2335, 2343 (2020).

   1.2. This action arises out of Defendants' practice of making pre-recorded telemarketing calls to individuals on the National Do-Not-Call Registry without prior express written consent (or any consent whatsoever), in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA") and provisions of the Texas Business & Commerce Code.

1.3. Plaintiff's telephone numbers were registered on the National Do-Not-Call Registry at the time of the calls and was so registered for more than 31 days prior to the calls.

## 2. **Parties.**

2.1. Plaintiff is, and at all times mentioned herein was, a citizen and resident of this District.

2.2. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

2.3. Plaintiff is, and at all times mentioned herein was, a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27).

2.4. Plaintiff is, and at all times mentioned herein was, a "purchaser" as defined by Tex. Bus. & Com. Code § 302.001(3).

2.5. Allstate is a business entity with principle place of business in Illinois.

2.6. Allstate is and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

2.7. Allstate is and at all times mentioned herein was, a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27).

2.8. Maverick Leads is a business entity with principle place of business in Alabama.

2.9. Maverick Leads is and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

2.10.    Maverick Leads is and at all times mentioned herein was, a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27).

2.11.    Maverick Leads is and at all times mentioned herein was, a "seller" as defined by Tex. Bus. & Com. Code § 302.001(5).

## 3.  Jurisdiction and Venue.

3.1. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

3.2. This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a), because they are so closely related to the federal claims that they form a single case or controversy.

3.3. This Court has personal jurisdiction over Allstate because Allstate called a resident of Texas and Allstate makes numerous calls to other residents of Texas.

3.4. Allstate is aware that it is calling residents of Texas and dialing into the State of Texas. Allstate took these actions to establish contacts with the State of Texas.

3.5. This Court has personal jurisdiction over Maverick Leads because Maverick Leads called a resident of Texas and Maverick Leads makes numerous calls to other residents of Texas.

3.6. Maverick Leads is aware that it is calling residents of Texas and dialing into the State of Texas. Maverick Leads took these actions to establish contacts with the State of Texas.

3.7. Venue is proper because the Plaintiff is a resident of this District and Defendants have sufficient contacts in this State and District to subject it to personal jurisdiction. As set forth above, Defendants targeted residents of this District and made calls into this State.

## 4. The Law Regarding Robocalls

4.1. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

## 5. The National Do Not Call Registry

5.1. The national Do Not Call Registry (the "Registry") allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.  See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

5.2. The TCPA and implementing regulations prohibit the initiation of

telephone solicitations to residential and wireless telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

5.3. The regulations exempt from liability a caller who has obtained the subscriber's signed, written agreement to receive telephone solicitations from the caller. 47 C.F.R. § 64.1200(c)(2)(ii). That agreement must also include the telephone number to which the calls may be placed. *Id.*

5.4. The Federal Communications Commission found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

5.5. These regulations are codified in part at 47 CFR 64.1200(d)(1)-(7).

5.6. Specifically, these regulations require a company to provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, **and a telephone number or address at which the person or entity may be contacted.** 47 CFR 64.1200(d)(4) (emphasis added).

5.7. These policies and procedures prohibit a company from making calls for telemarketing purposes[1] unless they provide the required information. 47

---

[1] The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business

CFR 64.1200(d).

5.8. Accordingly, all telemarketing calls violate the TCPA, unless Defendants

can demonstrate that they have provided the required information on each

of the calls.

5.9. There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through

§ 227(c):

> [S]ection 227(c)(5)... empowers 'any person' to sue for
> damages and injunctive relief for do-not-call violations 'by
> or on behalf of' a company. In accordance with this
> statutory provision, the Commission's company-specific
> do-not-call rules provide that '[n]o person or entity shall
> initiate any call for telemarketing purposes to a residential
> telephone subscriber unless such person or entity has
> instituted procedures for maintaining a list of persons who
> request not to receive telemarketing calls made by or on
> behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013).

5.10.    These requirements are separate but cumulative.  In other words, a

company must comply with both the required information and comply with

---

relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

the national "do not call" database regulations. A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

5.11. Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones as well as residential telephones. 47 CFR § 64.1200(e).

5.12.    Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls.  *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations").  In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification."  *In re Joint Petition Filed by DISH Network, LLC et al. for Declarator Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

5.13.    Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability.  Under those circumstances, including as described herein as to

Defendants, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

6. **Spoofing is Illegal**

6.1. The regulations enforcing and interpreting the TCPA, also require that any person or entity that engages in telemarketing must transmit caller identification information.[2]   47 C.F.R. § 64.1601(e). **This prevents a telemarketer from "spoofing" (using a false identification for their marketing calls) the telephone number from which the telemarketing call is made. Additionally, the regulations require telemarketers to** provide the name of the telemarketer when available by the telemarketer's carrier and the seller's customer service number.

6.2. Here Defendants did not comply with the requirements of 47 C.F.R. § 64.1601(e) as it provided incorrect information regarding the number from which the calls were being made.

7. **Texas' Anti Solicitation and Robo-Calling Statutes**

7.1. Section 302.101 of the Texas Business & Commerce Code prohibits sellers from engaging in telephone solicitation from a location in this state or to a

---

[2] The information required is: (1) the calling party number, "CPN" or automatic numbering information, "ANI"; and (2) the name of the telemarketer. 47 C.F.R. § 64.1601(e).

purchaser located in this state unless the seller obtains a registration certificate from the Office of the Secretary of State for the business location from which the solicitation is made.

7.2. Sellers engaging in telephone solicitations are required to register, and among other things, list "each telephone number to be used by the seller and the address where each telephone using the number is located." §302.151(10).

7.3. Section 302.302(a) of the Texas Business & Commerce Code provides that a person who violates this chapter is subject to a civil penalty of no more than $5,000 for each violation. Furthermore, section 302.302(d) provides that the party bringing the action is also entitled to recover all reasonable cost of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorneys' fees.

7.4. Pursuant to section 305.053(a) of the Texas Business & Commerce Code, a person who receives a communication that violates 47 U.S.C. § 227, or a regulation adopted under that provision, may bring an action against the person who originates the communication for an injunction, damages or both.

## 8. Factual Allegations Concerning Allstate

8.1. Allstate engages in widespread unsolicited telemarketing to promote the sale of its insurance products.

8.2. Allstate engages insurance agents across the country to conduct that
telemarketing on its behalf and authorizes those insurance agents to place
telemarketing calls on Allstate's behalf and subject to Allstate's control,
including prerecorded telemarketing calls and calls to numbers registered
on the National Do-Not-Call list.

8.3. Allstate is extensively involved in the operation of its insurance agents.

8.4. Allstate requires its insurance agents to follow detailed standards.

8.5. Allstate sets the standards its insurance agents must follow.

8.6. Allstate has the ability, at any time without prior notice to its insurance
agents, to change the standards its insurance agents must follow.

8.7. From time to time, Allstate changes the standards its insurance agents
must follow. Allstate has the right to monitor its insurance agents'
compliance with Allstate's standards and terminate the agency
relationship for noncompliance.

8.8. Allstate sets customer growth targets for its insurance agents.

8.9. Allstate monitored and periodically assessed its insurance agents'
performance.

8.10.       Allstate authorized its insurance agents to hire certain
telemarketing vendors that Allstate expressly approved ("Allstate
Approved Vendors") to act as sub-agents and placed a telemarketing calls
on Allstate's behalf and subject to Allstate's control, including calls to

numbers assigned on the National Do-Not-Call list.

8.11.      Allstates' insurance agents were also allowed to hire telemarketing

vendors with which Allstate had no direct contractual relationship

("Non-Contracted Telemarketers"). These vendors may or may not have

been approved by Allstate.

8.12.      The Allstate Approved vendors and the Non-Contracted

Telemarketers are collectively referred to as the "Allstate Telemarketing

Vendors."

8.13.      Maverick Leads is an Allstate Telemarketing Vendor.

8.14.      Prior to granting approval, Allstate investigated the telemarketing

practices of the Allstate Approved Vendors and approved of those

practices.

8.15.      At all relevant times, Allstate was aware that the Allstate

Telemarketing Vendors placed calls promoting Allstate's insurance

products and Allstate approved that conduct.

8.16.      At all relevant times, Allstate was aware that the Allstate

Telemarketing Vendors place telemarketing calls to numbers registered

on the National Do-Not-Call list and Allstate approved that conduct.

8.17.      At all relevant times, Allstate was aware that the Allstate

Telemarketing Vendors place telemarketing calls to persons who had not

provided Allstate with the express written consent to receive such calls

and Allstate approved that conduct.

8.18.    It was common for Allstate to discuss the Allstate Telemarketing Vendors with its insurance agents during meetings with its insurance agents.

8.19.    Allstate set up meetings between its insurance agents and the Allstate Telemarketing Vendors for the vendors to pitch their services. Allstate invited its insurance agents to attend those meetings, and Allstate participated in those meetings.

8.20.    Allstates' insurance agents maintained interim control over the telemarketing conduct of the Allstate Telemarketing Vendors for calls promoting Allstate's insurance products.

8.21.    The insurance agents specified to the Allstate Telemarketing Vendors the geographic parameters for the leads they could telemarketer to, the specific type(s) of Allstate insurance to promote, the number of lease to generate, and the times in which the call.

8.22.    The Allstate insurance agents instructed the vendors whether to provide the leads contact information to the agency for a call back, or transfer the calls "live" to the agency into what specific telephone number(s).

8.23.    The Allstate insurance agents had the right to terminate the relationship with the Allstate Telemarketing Vendors.

8.24.    The Allstate insurance agents had the ability to make interim changes to the call specifications.

8.25.    The Allstate insurance agents changed various call specifications from time to time.

8.26.    The Allstate insurance agent sold Allstate insurance policies to leads generated by the illegal telemarketing calls placed by the Allstate Telemarketing Vendors, thereby enlarging Allstate's customer base, and insurance premiums were collected for those insurance policies.

8.27.    When an Allstate insurance agent sell an Allstate insurance policy as a result of illegal telemarketing calls and a premium is collected on that policy, Allstate receives a portion of the premium and the Allstate agent receives a portion of the premium.

8.28.    Allstate knowingly accepted the benefits of the illegal telemarketing calls, both in the form of advertising benefits that Allstate obtained during the calls themselves and in collection of premium payments resulting from any sales made from those calls.

8.29.    This is not the first lawsuit against Allstate alleging TCPA violations that arise from calls placed by an Allstate Telemarketing Vendor. Indeed, Allstate previously settled the class action concerning calls placed by one such vendor. See 19-cv-06662 (Gebka v. Allstate Insurance Company).

8.30.    Accordingly, Allstate has been on notice since at least 2019 that the Allstate Telemarketing Vendors or violating the TCPA on Allstate's behalf, it Allstate has allowed the violations to continue.

## 9.  Factual Allegations Concerning Doughty

9.1.  Plaintiff is the customer user or subscriber to cell phone numbers:

9.1.1.    (610) XXX-0995; DNC Registration 9/11/2007.

9.1.2.    (610) XXX-0033; DNC Registration 6/28/2006.

9.1.3.    (512) XXX-4946; DNC Registration 10/6/2011.

9.1.4.    (484) XXX-0292; DNC Registration 1/17/2022.

9.2.  The above numbers are collectively referred to as the "Telephone Numbers."

9.3.  Each of the Telephone Number is a cellular number and is a residential number that is used for residential purposes.  None of the Telephone Numbers are business numbers. Doughty is retired and conducts no business on the Telephone Numbers.

9.4.  The Telephone Numbers are used for personal purposes, such as contacting friends and relatives, listening to music while exercising at home, enjoying weather apps, and to assist with cooking home meals.

9.5.  The Telephone Numbers are telephone numbers assigned to a cellular telephone service.

9.6. Plaintiff did not provide prior express written consent (or any consent) to Defendant for the calls made by Defendant to the Telephone Numbers.

9.7. Numerous calls were made to the Telephone Numbers by Allstate or one of its Telemarketing Vendors. The following is a chart of the calls of which Plaintiff is currently aware. Plaintiff believes that discovery will show additional calls.

|  | **Date** | **Time** | **From** | **Line** |
|---|---|---|---|---|
| 1 | 6/9/22 | 2:55 PM | (689) 666-1837 | 0033 |
| 2 | 6/16/22 | 3:02 PM | (386) 659-3986 | 0995 |
| 3 | 6/16/22 | 4:38 PM | (215) 345-6188 | 0995 |
| 4 | 6/28/22 | 5:02 PM | (470) 460-5094 | 0995 |
| 5 | 9/6/22 | 3:40 PM | (629) 209-6873 | 0292 |
| 6 | 9/14/22 | 3:14 PM | (689) 666-1968 | 0995 |
| 7 | 9/15/22 | 9:18 AM | (629) 209-6875 | 0292 |
| 8 | 9/19/22 | 1:45 PM | (215) 345-6188 | 0995 |
| 9 | 10/3/22 | 10:20 AM | (470) 574-3180 | 0995 |
| 10 | 10/15/22 | 12:06 PM | (386) 219-3574 | 0033 |
| 11 | 10/17/22 | 7:11 PM | (404) 800-7148 | 0033 |
| 12 | 10/24/22 | 4:43 PM | (215) 967-3597 | 0292 |
| 13 | 10/25/22 | 9:42 AM | (215) 593-2424 | 0292 |
| 14 | 10/25/22 | 9:53 AM | (215) 345-6188 | 0995 |
| 15 | 10/25/22 | 10:13 AM | (215) 345-6188 | 0995 |
| 16 | 10/26/22 | 12:55 PM | (404) 595-3575 | 0995 |
| 17 | 10/31/22 | 2:47 PM | (407) 594-3998 | 0292 |

| 18 | 11/2/22 | 1:15 PM | (407) 594-2995 | 0995 |
|---|---|---|---|---|
| 19 | 11/3/22 | 12:56 PM | (404) 595-3912 | 0033 |
| 20 | 11/7/22 | 1:09 PM | (470) 750-8568 | 0292 |
| 21 | 11/7/22 | 5:21 PM | (470) 697-9442 | 0033 |
| 22 | 11/11/22 | 1:19 PM | (470) 348-8029 | 0995 |
| 23 | 11/15/22 | 10:54 AM | (404) 595-3844 | 0995 |
| 24 | 11/15/22 | 11:13 AM | (404) 595-3844 | 0995 |
| 25 | 11/16/22 | 10:05 AM | (215) 967-8814 | 0995 |
| 26 | 11/17/22 | 9:54 AM | (223) 216-7253 | 0033 |
| 27 | 11/18/22 | 10:18 AM | (215) 967-2429 | 0292 |
| 28 | 11/19/22 | 1:14 PM | (215) 967-2454 | 0292 |
| 29 | 11/22/22 | 1:55 PM | (386) 219-3451 | 0995 |
| 30 | 11/29/22 | 2:02 PM | (863) 238-7270 | 0292 |
| 31 | 11/29/22 | 2:11 PM | (215) 345-6188 | 0292 |
| 32 | 11/29/22 | 2:13 PM | (689) 202-1355 | 0292 |
| 33 | 11/30/22 | 12:50 PM | (629) 262-5382 | 0292 |
| 34 | 11/30/22 | 12:51 PM | (689) 202-1375 | 0292 |
| 35 | 12/2/22 | 2:53 PM | (470) 750-8599 | 0292 |
| 36 | 12/5/22 | 12:58 PM | (470) 750-8612 | 0292 |
| 37 | 12/6/22 | 5:03 PM | (215) 967-3647 | 0995 |
| 38 | 12/21/22 | 2:57 PM | (629) 231-8191 | 0292 |
| 39 | 12/22/22 | 1:57 PM | (610) 200-9599 | 0995 |
| 40 | 1/6/23 | 1:14 PM | (267) 313-9952 | 0292 |

| 41 | 1/13/23 | 10:53 AM | (215) 967-8774 | 0995 |
| 42 | 1/13/23 | 11:47 AM | (215) 967-8764 | 0995 |
| 43 | 1/20/23 | 10:50 AM | (386) 261-3140 | 0995 |
| 44 | 2/2/23 | 9:35 AM | (267) 313-9952 | 0292 |
| 45 | 2/14/23 | 2:28 PM | (404) 595-3959 | 0292 |
| 46 | 2/16/23 | 12:00 PM | (215) 967-8465 | 0292 |
| 47 | 3/2/23 | 10:14 AM | (267) 376-0433 | 0292 |
| 48 | 3/20/23 | 1:16 PM | (267) 313-9977 | 0995 |
| 49 | 3/20/23 | 1:25 PM | (215) 845-8024 | 0995 |
| 50 | 3/22/23 | 9:14 AM | (215) 967-8764 | 0995 |
| 51 | 3/22/23 | 9:32 AM | (267) 313-9991 | 0292 |
| 52 | 3/29/23 | 10:23 AM | (215) 967-8764 | 0995 |
| 53 | 3/30/23 | 10:38 AM | (215) 967-8872 | 0292 |
| 54 | 4/3/23 | 9:07 AM | (223) 201-5806 | 0995 |
| 55 | 4/4/23 | 10:03 AM | (215) 967-8520 | 0292 |
| 56 | 4/11/23 | 10:26 AM | (484) 307-6991 | 0292 |
| 57 | 4/11/23 | 10:27 AM | (484) 307-6991 | 0292 |
| 58 | 4/17/23 | 11:42 AM | (215) 967-8526 | 0995 |
| 59 | 4/17/23 | 12:54 PM | (215) 967-8131 | 0995 |
| 60 | 4/17/23 | 1:30 PM | (215) 967-8905 | 0292 |

| 61 | 4/17/23 | 2:30 PM | (215) 345-6188 | 0292 |
| 62 | 4/18/23 | 8:26 AM | (215) 345-6188 | 0292 |
| 63 | 4/18/23 | 2:25 PM | (215) 967-8737 | 0292 |
| 64 | 4/25/23 | 8:46 AM | (484) 307-6944 | 0292 |
| 65 | 4/27/23 | 12:29 PM | (215) 967-8305 | 0292 |
| 66 | 6/20/23 | 9:43 AM | (215) 967-2738 | 4946 |
| 67 | 9/13/23 | 1:14 PM | (979) 376-1647 | 4946 |
| 68 | 10/23/23 | 10:30 AM | (469) 983-7262 | 4946 |

9.8. On many occasions in the Allstate Telemarketing Vendors were told by

Plaintiff to quit calling the Telephone Numbers. Yet, the calls did not stop.

9.9. Defendants knowingly violated the TCPA and the Texas Business & Commerce Code TCPA when they made the calls to the Telephone Numbers and Defendants' violations were willful.

9.10.     Allstates' Telemarketing Vendors went to great lengths to conceal their identity as many of the calling numbers were spoofed.

9.11.     The calls were not made for emergency purposes.

9.12.     The Telemarketing Vendors have failed to register pursuant to § 302.101 of the Texas Business & Commercial Code to provide telephone solicitations.

9.13.     The telemarketing vendors do not qualify for an exemption under § 302.052 through § 302.061 of the Texas Business & Commercial Code or any section of Chapter 302 of the Texas Business & Commercial Code.

10. **Defendant's Liability**

10.1.     Plaintiff was harmed by Defendant's actions of calling his residential cellular phone(s) while his number(s) were on the national Do Not Call Registry, without consent, in the following manners:

10.1.1.  Plaintiff's privacy was invaded by Defendant;

10.1.2.  Plaintiff was harassed and abused by Defendant's telephone calls;

10.1.3.  Defendant's calls were a nuisance to Plaintiff;

10.1.4. Defendant's calls used the battery on Plaintiff's cell phone and Plaintiff had to pay to recharge the battery;

10.1.5.  Plaintiff's phone was unavailable for other use while processing the illegal calls from Defendant;

10.1.6. Defendant illegally seized Plaintiff's telephone line while it made illegal calls to Plaintiff's cellular telephone;

10.1.7. Plaintiff's telephone line was occupied by multiple unauthorized calls from Defendant;

10.1.8.  Defendant's seizure of Plaintiff's telephone line was intrusive; and

10.1.9.  Plaintiff was inconvenienced by Defendant's calls, by among other things, hearing his ring and having to check the calling party.

10.2.	These forms of actual injury are sufficient for standing and jurisdictional purposes.

## 11. FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS - Violations of the TCPA, 47 U.S.C. § 227(c))

11.1. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

11.2.	Defendants placed, or had placed on their behalf, telemarketing telephone calls to Plaintiff's residential telephone numbers.

11.3. Plaintiff's telephone numbers were all on the National Do-Not-Call Registry at the time of calls.

11.4.	Plaintiff received two or more such calls in a 12-month period.

11.5. Plaintiff is entitled to an award of $500 in statutory damages for each call pursuant to 47 U.S.C. § 227(c)(5).

11.6. Plaintiff is entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

## 12. SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS - Violations of the TCPA, 47 U.S.C. § 227(c) and its Regulations.

12.1. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

12.2. Defendants placed, or had placed on its behalf, two or more telemarketing telephone calls to Plaintiff's residential telephone numbers in a 12-month period.

12.3. Defendants did so despite not providing a telephone number or address at which the person or entity making the call could be contacted.

12.4. Thus, Defendants did so without complying with the identification and disclosure requirements. 47 C.F.R. § 64.1200(d)(4).

12.5. Defendants also did not comply with the internal do not call regulations. 47 C.F.R. § 64.1200(d).

12.6. Plaintiff is entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(c)(5).

12.7.     Plaintiff is entitled to an award of treble damages in an amount up to $1,500 telephone call, pursuant to 47 U.S.C. § 227(c)(5).

## 13. THIRD CAUSE OF ACTION AGAINST ONLLY MAVERICK LEADS - Violations of Texas Business and Commerce Code, § 302.101

13.1. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

13.2.     Maverick Leads failed to obtain a registration certificate from the Office of the Secretary of State of Texas pursuant to § 302.101 of the Texas Business and Commerce Code.

13.3.     Maverick Leads placed telephone solicitations to Plaintiff's telephone numbers.

13.4.     Maverick Leads' telephone solicitations were made from a location in Texas or to Plaintiff while he was located in Texas.

13.5.     Plaintiff is entitled to an award of up to $5,000 for each violation and all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.

## 14. FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS – Violations of Texas Business and Commerce Code, § 305.053

14.1.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

14.2.     Defendants placed in a 12-month period at least one and many times more than one telemarketing telephone calls to Plaintiff's telephone numbers.

14.3.      Each of these calls violated 47 U.S.C. § 227 or a regulation adopted under that provision.

14.4.      Plaintiff is entitled to:

14.4.1. a permanent injunction to prevent any further violations of the Texas Business & Commerce Code, Chapter 305;

14.4.2. the greater of $500 for each violation or Plaintiff's actual damages (*see* Tex. Bus. & Com. Code §304.053(b);

14.4.3. the greater of $1,500 for each violation or Plaintiff's actual damages for each call made knowingly or intentionally (*see* Tex. Bus. & Com. Code §304.053(c).

## 15. Prayer for Relief

15.1. Plaintiff prays for the following relief:

15.1.1.  An order declaring that Defendants' actions, as set out above, violate the TCPA and the Texas Business and Commerce Code because they are a violation of 47 U.S.C. §§ 227 (c), 47 C.F.R. §§64.1200(c)(4) and/or 47 C.F.R. § 64.1601(e);

15.1.2.  An order declaring that Maverick Leads' actions, as set out above, violate Tex. Bus. & Com. Code § 302.101.

15.1.3.  An award of statutory damages under the Texas Business and Commerce Code;

15.1.4.  An award of treble damages;

15.1.5. An award of reasonable attorneys' fees and costs, including the

costs set forth pursuant to Tex. Bus. & Com. Code § 302.302(d); and

15.1.6. All other relief, in law and in equity, to which Plaintiff may be

entitled.

## 16. Jury Demand

16.1. Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

By: _/s/ Chris R. Miltenberger_
Chris R. Miltenberger
Texas Bar Number: 14171200

**The Law Office of Chris R.
Miltenberger, PLLC**
1360 N. White Chapel, Suite 200
Southlake, Texas 76092-4322
817-416-5060 (office)
817-416-5062 (fax)
chris@crmlawpractice.com

**Attorneys for Plaintiff**

### Certificate of Service

The undersigned certifies that the foregoing document was filed electronically through the Court's CM/ECF system in compliance with the Local Rules.

By: _/s/ Chris R. Miltenberger_
Chris R. Miltenberger